**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANCIS P. LIVELY, | § § § § |
| Plaintiff, | § § |
| v. | § § § |
| WAFRA INVESTMENT ADVISORY GROUP, INC., a/k/a WAFRA, INC., and FAWAZ AL-MUBARAKI. | § § § § § Case No. |
| Defendants. | § § § § |

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Francis P. Lively files this Complaint and Jury Demand against defendants WAFRA Investment Advisory Group, Inc., a/k/a WAFRA, Inc. and Fawaz Al-Mubaraki (collectively, "Defendants"), based on personal knowledge of his own actions and on information and belief as to all other matters, as follows:

### I.

### PRELIMINARY STATEMENT

More than a half century has passed since Congress enacted the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621 *et seq*. The sad truth, however, is that elder Americans continue to suffer age discrimination in the United States today. In fact, as people live longer with inherently better health outcomes, they not only remain able but also want to work longer. Unfortunately, age discrimination, which relies on invalid stereotypes, persists. Today, employment decisions too often continue to betray discriminatory hiring and firing practices that are reflected in the facts of this case.

1

Plaintiff Francis P. Lively ("Lively"), a successful 64-year-old real estate executive, braved Defendants' campaign to rid WAFRA of elder workers before he too was terminated on pretextual grounds. Defendants cynically seized upon contrived reasons to terminate Lively in order to clear a path for younger executives and to relieve the company of the duties it owes him. Lively's termination is just another episode in a continuing saga of unlawful discrimination and retaliation directed against elder employees, particularly senior management, based on their age. Lively brings this action to obtain monetary damages, partnership and carried interests (*i.e.*, profit sharing) to which he is entitled, and other appropriate relief.

## II.

## PARTIES

1. Plaintiff Francis P. Lively is an individual formerly employed as Senior Managing Director of WAFRA Investment Advisory Group, Inc. Lively is a resident of New York.

2. Defendant WAFRA Investment Advisory Group, Inc., a/k/a WAFRA, Inc. ("WAFRA"), is a global investment firm with its headquarters and principal place of business in New York.

3. Defendant Fawaz Al-Mubaraki ("Al-Mubaraki") is an individual who serves as the Chief Executive Officer of WAFRA. He is a resident of New York.

## III.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction of the claims asserted in this action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 623, and 29 U.S.C. § 626(c)(1).

5. The Court has supplemental jurisdiction of all state- and city-law claims asserted in this action pursuant to 28 U.S.C. § 1367.

6. Venue is properly vested in this Court under 28 U.S.C. § 1391(b) because Defendants' principal place of business is located in this district.

## IV.

## FACTUAL BACKGROUND

**A.  Lively: Steer By Vision.**

7. Lively grew up in Alexandria, Virginia. Upon graduating from college in the mid-1970s, Lively pursued a career in the real estate industry and, over the next 40 years, became known as a highly skilled real estate investor. A family man, Lively has three children, two of whom are pursuing careers in real estate after seeing their father's passion for the industry. Lively's success was due, in part, to his vision: the creation of a global network of talented real estate professionals working together on global real estate investment transactions.

8. Throughout his career, Lively has pursued this vision by leading international organizations, including the Association of Foreign Investors in Real Estate, and holding prominent roles in others, such as the Urban Land Institute, that promote the development and expansion of global real estate investment markets. It is no surprise, therefore, that Lively accepted an offer to become the real estate leader at WAFRA, a global investment company that manages billions of dollars of global real estate assets.

**B.  After Twenty-One Years Of Loyal And Outstanding Service To WAFRA, Lively Was Terminated For Improper Reasons.**

   **1.  Despite Lively's Record of Loyal And Outstanding Service, WAFRA Seized Upon False Allegations of Sex Discrimination to Justify Brutally Terminating Him.**

9. During 21 years of loyal and outstanding service, Lively headed and managed WAFRA's Real Estate Division, growing the division from less than $250 million of assets to

approximately $3 billion of global assets.  Lively initially served as Senior Vice President in 1997, and was promoted to Executive Vice President in 2014.  Last year, he was appointed Senior Managing Director of the Real Estate Division.

10. In these roles, Lively was responsible for developing and managing groups of professionals within the Real Estate Division, including acquisitions, asset management, accounting, marketing, risk management, and compliance.  Lively also implemented investment objectives for individual deals and fund structures, and successfully worked with global investors to raise millions of dollars for real estate investments in the United States.  For these efforts, Lively was entitled to preferred direct investment access and certain carried interests in these funds.

11. As a top performer, Lively consistently exceeded WAFRA's expectations and was commended as an invaluable member and leader of the Real Estate Division.  For example, WAFRA's Chief Executive Officer, and Lively's supervisor since 2017, Al-Mubaraki, recognized Lively's substantial contributions and exceptional work by email in 2017, and again in 2018, during Lively's annual self-evaluation.

12. Without any opportunity for input, Lively was shocked when, on April 30, 2018, he received a letter from Padrone, HR Director at WAFRA, stating that he was suspended without pay, effective immediately.  The very next day, with no formal explanation of the "conduct" in question, Lively received a letter on May 1, from WAFRA's Chief Administrative Officer, Healy, informing him that he was terminated for purportedly violating company policies and the code of ethics prohibiting sex discrimination and harassment in the workplace.

## 2. Lively's Termination Was A Pretext To Conceal WAFRA's Discriminatory Determination To Terminate Older Employees.

13. The letters from Padrone and Healy were meant to disguise WAFRA's objectives. Beginning in or around June 2017, WAFRA appointed Al-Mubaraki to the position of Chief Executive Officer. As a result, he became Lively's direct supervisor. Shortly thereafter, Al-Mubaraki began making negative comments about Lively's age. In meetings with WAFRA executives and others, Al-Mubaraki stated that Lively (and other senior executives) was too old and that he would seek to replace Lively (and them) with younger counterparts.

14. On November 13, 2017, Al-Mubaraki's negative view of Lively's age again surfaced at an after-hours gathering at WAFRA's offices that included Lively, his son, and Adel Mohamad Al-Bader ("Al-Bader"), a senior executive from WAFRA's parent company, the Public Institution For Social Security ("PIFSS") in the State of Kuwait. At the gathering, Al-Mubaraki casually stated to Lively's son that WAFRA needed to replace older employees like his father with younger employees like Lively's son.[1]

15. Five months later, Lively was terminated without the benefit of an investigation, process, or a meeting with his supervisor and Human Resources. Al-Mubaraki's conduct was plainly borne of an animus towards Lively because of his age, and bears no rational connection to lawful employee recruiting and retention practices.

16. Importantly, Healy's contention that Lively was terminated for sex discrimination and harassment is belied by the facts. The alleged complainant, Sabine Kraut ("Kraut"), has regularly and voluntarily solicited Lively's involvement in her personal and professional life.

---

[1] Lively's son is also a real estate executive and licensed to practice law in New York.

Lively had no reason to believe that their interactions were anything but welcomed by Kraut, who purposely pursued the friendship and the business mentoring relationship. Thus, the manufactured basis for Lively's termination was nothing more than a pretext to fire him for being an older worker.

C. **WAFRA's Termination Of Other Senior Executives, And Elimination Of An Entire Office Comprised Of Senior Executives, Establishes A Pattern of Age Discrimination.**

17. During its campaign to purge the company of elder workers, WAFRA terminated or forced out many of its senior executives, including: (1) Mohamad Khouja, former Chief Executive Officer; (2) Anthony Barbuto, former Chief Financial Officer; (3) Paul Mackin, former Senior Managing Director of the Private Asset Management Division; (4) P. Christopher Leary, former Senior Managing Director of Securities; and (5) Peter Petrillo ("Petrillo"), former Senior Managing Director of WAFRA Partners LLC, a profitable private equity arm operating as a subsidiary of WAFRA. Notably, Petrillo's group, which comprised of four older Managing Directors, was eliminated in its entirety.

18. These individuals have their own unsettling stories, including other litigation presently brought against WAFRA and Al-Mubaraki, that involve criticisms of their age and the alleged need to replace them with younger counterparts. Prior to his own termination, Lively complained to his supervisor about the loss of talent and experience, as well as the discriminatory pattern that was emerging. Following those commiserations, Lively was informed that there was no pattern and that he should simply manage his group and stay positive. As was also assured by Al-Mubaraki's supervisors based in Kuwait, the claims of age discrimination could not be true and Lively himself would not be terminated. Those individuals respectively represented that Lively

was a valuable member of the team and any attempts to interfere with his leadership in his division would not be permitted.

### D. WAFRA Retaliated Against Lively For Reporting Al-Mubaraki's Misconduct And For Supporting Colleagues Who Were Complaining Of Similar Misconduct.

19. Three fateful conversations serve to illustrate WAFRA's general apathy towards Lively's plight. On November 14, 2017, Lively first reported Al-Mubaraki's discriminatory comments and stated plans to the Human Resources Director, Padrone, and then to the Chief Operating Officer, Campagna. Padrone expressed frustration that Al-Mubaraki *continued to engage* in inappropriate conduct. Campagna, in a separate conversation, expressed forlorn acceptance of Al-Mubaraki's conduct and asked whether Lively reported his complaint to anyone else at the office. Lively responded by asking him if it mattered.

20. Lively further discussed Al-Mubaraki's conduct with Al-Bader, a Senior Manager of WAFRA's parent company, PIFSS, who was present at the meeting of November 13, 2017, along with Al-Bader's colleague, Joel D'Souza. Both men understood Lively's position but suggested that he view Al-Mubaraki's statement as humorous, or as a joke. Lively told them he did not see it as such, and that Al-Mubaraki says what he really thinks, jokingly or otherwise.

21. As a result of reporting Al-Mubaraki's misconduct, and consoling others enduring similar discrimination, WAFRA seized the opportunity to terminate Lively on the basis of a false accusation of sex discrimination and harassment. To date, Lively has been denied an opportunity to discuss his termination with Al-Mubaraki or Padrone.

### E. WAFRA Failed To Adequately Respond To Lively's Complaints Regarding Al-Mubaraki's Misconduct.

22. As stated above, Lively reported Al-Mubaraki's misconduct to WAFRA and PIFFS leadership. Because Lively had not received a response or remedy, he followed up with Padrone

and Campagna on at least two occasions, weeks after he lodged his complaint. Both Padrone and Campagna continued to express their frustration with Al-Mubaraki's conduct but offered no remedy. As such, Lively feared that they would take no action regarding his complaint. Ultimately, and unfortunately, Lively's fear became not only a reality, but also the basis for a discriminatory and retaliatory firing.

F.  **WAFRA's Smear Campaign To Justify Its Unlawful Termination Of Lively And To Intentionally Interfere With His Prospective Business Relations.**

23. As part of a continued effort to oppress Lively and justify his unlawful termination, WAFRA's employees published knowingly false statements about him. In particular, WAFRA personnel published confidential information submitted to the EEOC accusing Lively of allegedly causing a colleague to fear for her safety. WAFRA further declared in press statements that it terminated Lively based on its "investigation" into the complaint of the female employee.

24. Several press statements were accompanied by photographs of Lively, some of which are captioned as follows: (1) "WAFRA fires head of real estate over sexual harassment claims" in *The Real Deal* article, dated June 4, 2018; (2) "WAFRA head of real estate fired over sexual harassment claims" in a *Bisnow New York* article, dated June 5, 2018; (3) "Flirt Boss & Deputy" in the *Arab Times,* dated June 7, 2018; and (4) "Firecracker, Love Letters Ignite #MeToo Moment in Finance" in a *Bloomberg* article, dated June 4, 2018.

25. Like other industry leaders, Lively relies on his reputation to remain employed and to succeed within a competitive niche labor market within the real estate industry. Defendants' discriminatory conduct, animus-driven smear campaign, and termination of Lively had the intent and effect of alienating Lively from any employment prospects within the real estate industry.

26. In addition, Defendants' actions were designed to interfere with business relationships and prospective contracts to which Lively would have obtained substantial economic benefit. For example, Al-Mubaraki stymied Lively's efforts to develop relationships with potential partners, all the while emphasizing that Lively was too old to develop those relationships, and conveying that those relationships were best forged by younger executives.

27. Indeed, Lively had a reasonable expectation to enter into contracts with several potential partners to acquire properties for investment and management. These included: (1) Wafra Residential Value Investment II (*i.e.,* the German Fund II), valued at $500 million total capital assets under management ("AUM"); (2) Wafra Korea Investor Fund, valued at $300 million of AUM; (3) Boubyan Bank Fund, valued at $110 million of AUM; (4) Hotel Fund II ("Hotel Fund"), valued at $300 million of AUM; (5) a joint venture between PIFSS and the Holland Companies, valued at $400 to $600 million of AUM; (6) a joint venture with KFAS, valued at $200 million of AUM; and (7) prospective ventures with Middle East institutions in Kuwait, Bahrain, Qatar, and the United Arab Emirates, valued at $200 million of AUM. However, Defendants' actions had the intent and effect of interfering with these business relationships and prospective contracts, ultimately depriving Lively millions of dollars in compensation, and partnership and carried interests.

**G.    WAFRA Withholds Interests Owing To Lively.**

28. WAFRA also refuses to recognize Lively's entitlement to partnership and/or carried interests (*i.e.*, profit sharing in funds) relating to his work on several completed fund transactions, including the Hotel Fund.

29. Lively worked diligently and invested a great deal of time and effort in sourcing and managing these WAFRA funds, and leading WAFRA's real estate team to raise capital and

9

acquire assets. WAFRA cannot, and should not, be allowed to deprive Lively's entitlement to partnership and/or carried interests—a decision plainly motivated by WAFRA's animus against Lively based on age.

**H.     The Damage Done.**

30.     As a result of Defendants' unlawful conduct, Lively suffered substantial damages upwards of $20 million. Lively brings this action to: (1) redress Defendants' unlawful activities; (2) obtain compensation for his injuries; (3) obtain partnership and/or carried interests; and (4) obtain other appropriate relief to which he is entitled.

**I.     Lively Has Exhausted His Administrative Remedies.**

31.     On September 25, 2018, Lively filed his Charge of Discrimination ("Charge") with the New York District Office of the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination and retaliation.

32.     Pursuant to EEOC rules, a plaintiff may file an ADEA lawsuit in court sixty (60) days after filing a Charge, even without the issuance of a Notice of Right to Sue.[2] Because sixty days have elapsed since Lively filed his charge with the EEOC, he is entitled to bring this action.

**V.**

**CLAIMS**

**A.     Count One:  ADEA (Age Discrimination) – Against Defendant WAFRA**

33.     Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

---

[2] *Filing a Lawsuit*, U.S. EQUAL OPPORTUNITY COMM'N, https://www.eeoc.gov/employees/lawsuit.cfm (last visited Jan. 25, 2018).

34. By the acts and practices described above, Defendants discriminated against Lively during the course of his employment based on his age in violation of the ADEA, 29 U.S.C. § 623(a).

35. Defendants' acts and practices were severe and pervasive, and created an intimidating, offensive, and hostile work environment.

36. Defendants knew their actions were in violation of the law.

37. Defendants' actions were willful and malicious.

38. As a result of Defendants' actions, Lively suffered, and will continue to suffer, irreparable injury, monetary damages, mental anguish, severe emotional distress, humiliation, and damage to his reputation unless and until this Court grants relief.

B. **Count Two: ADEA (Retaliation) – Against Defendant WAFRA**

39. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

40. By the acts and practices described above, Defendants retaliated against Lively for his opposition to Defendants' unlawful employment practices in violation of the ADEA, 29 U.S.C. § 623(d).

41. Defendants knew their actions were in violation of the law.

42. Defendants' actions were willful and malicious.

43. As a result of Defendants' actions, Lively suffered, and will continue to suffer, irreparable injury, monetary damages, mental anguish, severe emotional distress, humiliation, and damage to his reputation unless and until this Court grants relief.

**C.  Count Three: New York State Human Rights Law (Age Discrimination) – Against All Defendants**

44. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

45. By the acts and practices described above, Defendants discriminated against Lively during the course of his employment based on his age in violation of New York Executive Law §§ 296(1)(a) and (3-a)(a).

46. Defendants' acts and practices were severe and pervasive, and created an intimidating, offensive, and hostile work environment.

47. Defendants knew their actions were in violation of the law.

48. Defendants' actions were willful and malicious.

49. As a result of Defendants' actions, Lively suffered, and will continue to suffer, irreparable injury, monetary damages, mental anguish, severe emotional distress, humiliation, and damage to his reputation unless and until this Court grants relief.

**D.  Count Four: New York State Human Rights Law (Retaliation) – Against All Defendants**

50. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

51. By the acts and practices described above, Defendants retaliated against Lively for his opposition to Defendants' unlawful employment practices in violation of New York Executive Law §§ 296(1)(e) and (7).

52. Defendants knew their actions were in violation of the law.

53. Defendants' actions were willful and malicious.

54. As a result of Defendants' actions, Lively suffered, and will continue to suffer, irreparable injury, monetary damages, mental anguish, severe emotional distress, humiliation, and damage to his reputation unless and until this Court grants relief.

### E. Count Five: New York City Human Rights Law (Age Discrimination) – Against All Defendants

55. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

56. By the acts and practices described above, Defendants discriminated against Lively during the course of his employment based on his age in violation of New York City Administrative Code §§ 8-101, 8-107(1)(a)(3).

57. Defendants' acts and practices were severe and pervasive, and created an intimidating, offensive, and hostile work environment.

58. Defendants knew their actions were in violation of the law.

59. Defendants' actions were willful and malicious.

60. As a result of Defendants' actions, Lively suffered, and will continue to suffer, irreparable injury, monetary damages, mental anguish, severe emotional distress, humiliation, and damage to his reputation unless and until this Court grants relief.

### F. Count Six: New York City Human Rights Law (Retaliation) – Against All Defendants

61. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

62. By the acts and practices described above, Defendants retaliated against Lively for his opposition to Defendants' unlawful employment practices in violation of New York City Administrative Code § 8-107(7).

63. Defendants knew their actions were in violation of the law.

64. Defendants' actions were willful and malicious.

65. As a result of Defendants' actions, Lively suffered, and will continue to suffer, irreparable injury, monetary damages, mental anguish, severe emotional distress, humiliation, and damage to his reputation unless and until this Court grants relief.

### G. Count Seven: Tortious Interference with Prospective Business or Contractual Relations – Against All Defendants

66. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

67. Lively had a number of prospective business relations with real estate investors.

68. Defendants were, at all relevant times, aware of these prospective business relations and the economic benefits that would have inured to Lively.

69. Lively had a reasonable expectation to enter into contracts with these potential investors and acquire properties for investment and management, with the probability of substantial future economic benefit to Lively. These transactions included: (1) Wafra Residential Value Investment II (*i.e.*, the German Fund II), valued at $500 million total capital assets under management ("AUM"); (2) Wafra Korea Investor Fund, valued at $300 million of AUM; (3) Boubyan Bank Fund, valued at $110 million of AUM; (4) Hotel Fund II, valued at $300 million of AUM; (5) a joint venture between PIFSS and the Holland Companies, valued at $400 to $600 million of AUM; (6) a joint venture with KFAS, valued at $200 million of AUM; and (7) prospective ventures with Middle East institutions in Kuwait, Bahrain, Qatar, and the United Arab Emirates, valued at $200 million of AUM.

70. Lively would have been entitled to partnership and/or carried interests from all of these transactions.

71. Defendants have wrongfully, intentionally, maliciously and in bad faith taken actions, including to discriminate against, defame, and wrongfully terminate Lively, which meaningfully interfered with his ability to enter into contracts with potential real estate investors.

72. These actions constitute tortious interference with prospective business relations.

73. Defendants have interfered, without lawful justification or excuse, with Lively's prospective business relations.

74. Defendants' actions to interfere with Lively's prospective business relations were taken by unlawful means and for an unlawful purpose.

75. Defendants' wrongful, interfering conduct was independently tortious and unlawful.

76. Defendants' interference with Lively's prospective business relations has resulted in actual harm and damage to Lively.

77. As the direct and proximate result of Defendants' wrongful conduct, Lively has suffered damages in an amount to be determined by the trier of fact.

**H.** **Count Eight:  Defamation Per Se – Against All Defendants**

78. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

79. WAFRA, acting by and through its employees, made defamatory statements that directly impugned the integrity and reputation of Lively.  WAFRA knew or should have known that these statements were false, and it was not privileged to make them.

80. WAFRA knew the statements were false because it knew or should have known that Lively did not engage in sex discrimination and retaliation against Kraut, who has purposefully and voluntarily solicited Lively's mentorship, friendship, and involvement in both her personal and professional life.

81. All of the alleged statements made by WAFRA, acting by and through its employees, were defamatory *per se* because they directly stated and/or suggested that Lively engaged in sex discrimination and retaliation.

82. Moreover, WAFRA's statements were intended to injure, and in fact injured, Lively's professional reputation by calling into question the legality and ethics of Lively's business practices. As WAFRA's Senior Managing Director of Real Estate, Lively routinely managed professional relationships with female colleagues, vendors, and clients. The nature of Lively's profession also required real estate investors of both sexes to maintain the highest confidence in his abilities and integrity. By declaring and suggesting that Lively acted unlawfully, unethically, and shamefully, WAFRA imputed actions to Lively that are incompatible with the proper conduct of his business, trade or profession.

83. WAFRA's statements were released to the public through press releases and public statements. The statements were disclosed with actual malice because WAFRA acted with knowledge that the statements were false and with reckless disregard as to whether they were false. WAFRA did not simply fail to conduct an investigation as to the falsity of its statements, but published the statements with ill will and/or with actual and reckless knowledge of their falsity in an effort to damage Lively's business reputation and to conceal its true reasons for Lively's discriminatory and retaliatory termination.

84. Because Lively has been injured in his trade, business, or profession as a direct result of WAFRA's false and defamatory statements, WAFRA is liable for defamation *per se* under New York law. Therefore, the law presumes damages, and no special damages need be proven at trial.

### I. Count Nine: Negligence – Against All Defendants

85. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

86. Defendants, as Lively's employer, owed Lively a duty to provide a place of employment free from discrimination and retaliation.

87. Defendants negligently failed to supervise, manage, train, monitor, and oversee the company's employees to ensure that they abided by the law and treated fairly all employees, including Lively.

88. WAFRA negligently failed to conduct an adequate (or any) investigation regarding Lively's complaint of age discrimination, and negligently failed to undertake an appropriate response to his complaint or to discipline Al-Mubaraki for engaging in discriminatory conduct.

89. Defendants negligently failed to ensure that Lively would not be wrongfully terminated based on false and derogatory information used as a pretext to conceal Defendants' discriminatory and retaliatory misconduct.

90. Defendants negligently failed to conduct an adequate investigation regarding the false charges of sexual harassment against Lively, and negligently failed to provide Lively with an opportunity to discuss his termination with Defendants and to review any findings and conclusions derived from any investigation.

91. As a direct and proximate result of Defendant's actions and omissions, it was foreseeable to a person of ordinary prudence that Lively would be exposed to discrimination and retaliation, which resulted in his wrongful termination.

### J. Count Ten: Unjust Enrichment – Against All Defendants

92. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

93. Defendants benefited from the work Lively performed. Lively was entitled to compensation and partnership and/or carried interests based on this work but was improperly denied.

94. The benefits to Defendants included, but were not limited to, the work Lively performed originating, securing, and/or managing WAFRA funds. Defendants benefited by, among other things, profiting from these funds. Lively's supervisor received substantial, additional compensation because of these funds.

95. WAFRA benefited by not compensating or crediting Lively with partnership and/or carried interests and future compensation for this work.

96. Equity and good conscience require restitution to Lively.

### K. Count Eleven: Quantum Meruit – Against All Defendants

97. Lively hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

98. Lively performed services in good faith for Defendants.

99. Defendants led Lively to believe that he would be rewarded with carried interests for originating and managing WAFRA funds.

100. Lively performed these services in good faith by originating and managing several funds.

101. Defendants accepted Lively's services. Defendants profited from the funds and from Lively's services. Lively's supervisor received substantial, additional compensation because of these funds.

102. It is customary at WAFRA, and in the industry, that the individuals responsible for originating, securing, and/or managing new deals receive compensation and/or carried interest. Lively performed these services expecting to be compensated for them.

103. Accordingly, Defendants should compensate Lively for the reasonable value of his services.

## VI.

## **DEMAND FOR JURY TRIAL**

104. Lively hereby demands a trial by jury on all triable issues.

## VII.

## **REQUEST FOR RELIEF**

WHEREFORE Lively respectfully requests that the Court enter judgment in his favor and against Defendants, as follows:

a. declaring that the acts and practices complained of herein are in violation of the ADEA, and state and city laws;

b. enjoining and permanently restraining Defendants from engaging in conduct or activities that violate the ADEA, and state and city laws;

c. immediately ceasing and refraining from engaging in conduct or activities with the purpose or effect of interfering with, terminating, or diminishing Lively's reputation, contracts, and business relationships with individuals, organizations, and the public at large;

d. granting other injunctive relief to which Lively is entitled;

e. awarding Lively compensatory and consequential damages, including, but not limited to back pay, front pay, bonuses, carried interests, unreimbursed business expenses, and other lost benefits;

f. awarding Lively exemplary, punitive, and liquidated damages to be determined by the trier of fact;

g. awarding Lively pre- and post-judgment interest at the highest lawful rates;

h. awarding Lively costs and disbursements incurred in bringing this action, including reasonable attorney and expert fees; and

i. granting Lively any other relief this Court deems just and proper.

Respectfully submitted,

By: /s/ William A. Brewer III
William A. Brewer III
NY State Bar No. 1300938
750 Lexington Avenue
14th Floor
New York, NY 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEY FOR PLAINTIFF FRANCIS P. LIVELY**