UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCIS P. LIVELY,

                Plaintiff,

        -against-

WAFRA INVESTMENT ADVISORY
GROUP, INC., a/k/a WAFRA INC., and
FAWAZ AL-MUBARAKI,

             Defendants.

Case No. 1:19-cv-03257-JPO

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

 

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Counsel for Defendants*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................ 1

Background ............................................................................................................................. 3

Legal Standard ..................................................................................................................... 10

Argument .............................................................................................................................. 12

I.      MR. LIVELY'S AGE DISCRIMINATION CLAIMS MUST BE DISMISSED. ........... 12

      A.      Mr. Lively Fails to Allege Sufficiently that Age Was a "But-For" Cause of, or Motivating Factor in, His Termination. ....................................... 12

      B.      Mr. Lively Fails to Plausibly Allege That Wafra Was Motivated By Discriminatory Intent. ............................................................................. 14

II.      MR. LIVELY'S RETALIATION CLAIMS MUST BE DISMISSED. ........................... 18

III.      MR. LIVELY'S STATE AND CITY LAW CLAIMS MUST BE DISMISSED. ........... 21

      A.      There Is No Basis to Exercise Supplemental Jurisdiction Over Mr. Lively's State and City Law Claims. ................................................... 21

      B.      Mr. Lively Fails to Adequately Plead His Remaining Claims............................ 22

Conclusion ........................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams ex rel. 100 Black Men in Law Enforcement Who Care* v. *City of New York*,
    No. 01 Civ. 9094(TPG), 2003 WL 1741858 (S.D.N.Y. Mar. 31, 2003) .................................11

*Amar* v. *N.Y.C. Health & Hosps. Corp.*,
    No. 14 Civ. 2503(ER), 2015 WL 3754999 (S.D.N.Y. June 15, 2015) ...................................11

*Anderson* v. *City of N.Y., Health & Hosp. Corp.*,
    No. 1:16-cv-01051 (GBD) (KHP), 2017 WL 9538862 (S.D.N.Y. Jan. 19,
    2017) ...................................................................................................................................19

*Anderson* v. *Davis Polk & Wardwell LLP*,
    850 F. Supp. 2d 392 (S.D.N.Y. 2012) ................................................................................20

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................10

*Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of NJ, Inc.*,
    448 F.3d 573 (2d Cir. 2006) ...............................................................................................24

*Berman* v. *Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................................24

*Boonmalert* v. *City of New York*,
    721 F. App'x 29 (2d Cir. 2018) ..........................................................................................13

*Carter* v. *Verizon*,
    No. 13 Civ. 7579(KPF), 2015 WL 247344 (S.D.N.Y. Jan 20, 2015)..............................19, 20

*Cleveland* v. *Caplaw Enters.*,
    448 F.3d 518 (2d Cir. 2006)................................................................................................10

*Coco Investments, LLC* v. *Zamir Manager River Terrace, LLC*,
    907 N.Y.S.2d 99 (N.Y. Sup. Ct. 2010) ...............................................................................22

*Cohen* v. *Postal Holdings, LLC*,
    873 F.3d 394 (2d Cir. 2017)................................................................................................21

*Culmone-Simeti* v. *N.Y.C. Dep't of Educ.*,
    No. 17 Civ. 2313 (ER), 2018 WL 3384437 (S.D.N.Y. July 11, 2018)..................................13

*Dimps* v. *Taconic Corr. Facility*,
    No. 17-cv-8806 (NSR), 2019 WL 1299844 (S.D.N.Y. Mar. 20, 2019) ...............................13

*Dinkins* v. *Suffolk Transp. Serv., Inc.*,
No. 07-CV-3567 (JFB)(AKT), 2010 WL 2816624 (E.D.N.Y. July 15, 2010) ................17, 20

*Dorfman* v. *Doar Commc'ns, Inc.*,
314 F. App'x 389 (2d Cir. 2009) ...........................................................................16

*EMA Fin., LLC* v. *AIM Expl., Inc.*,
No. 18 Civ. 145 (ER), 2019 WL 689237 (S.D.N.Y. Feb. 19, 2019) ....................................10

*Fattoruso* v. *Hilton Grand Vacations Co.*,
525 F. App'x 26, 27 (2d Cir. 2013) .........................................................................18

*Fazzari* v. *Cohen, Pontani, Lieberman, & Pavane, LLP*,
No. 14 Civ. 6549 (NRB), 2019 WL 1258483 (S.D.N.Y. Mar. 19, 2019)..............................14

*Foros Advisors LLC* v. *Digital Globe, Inc.*,
333 F.Supp.3d 354 (S.D.N.Y. 2018)........................................................................24

*Gerard* v. *Traffic Safety, LLC*,
No. 11 CV 8550(VB), 2012 WL 2866255 (S.D.N.Y. July 2, 2012) ...................................25

*Greene* v. *Brentwood Union Free School District*,
966 F. Supp. 2d 131 (E.D.N.Y. 2013) ......................................................................15

*Hill* v. *Bloomberg*,
No. 14-CV-9809 (CM), 2016 WL 1665599 (S.D.N.Y. Apr. 20, 2016)..................................17

*Hudson* v. *Goldman Sachs & Co.*,
304 A.D.2d 315 (1st Dep't 2003) ...........................................................................23

*Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*,
157 F. Supp. 3d 352 (S.D.N.Y. 2016)........................................................................25

*J.T. Magen & Co., Inc.* v. *Allen Edmonds Corp.*,
268 F. Supp. 3d 481 (S.D.N.Y. 2017)........................................................................25

*Kforce, Inc.* v. *Alden Personnel, Inc.*,
288 F. Supp. 2d 513 (S.D.N.Y. 2003)........................................................................23

*Klaper* v. *Cypress Hills Cemetery*,
593 F. App'x 89 (2d Cir. 2015) .............................................................................21

*Kraut* v. *Wafra Inc., et al.*,
No. 1:18-cv-11155 (DAB) ..................................................................................8

*L-7 Designs, Inc.* v. *Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)................................................................................11

iii

*LivePerson, Inc.* v. *24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015).................................................................25

*Mazzeo* v. *Mnuchin*,
    No. 16 Civ. 2747 (VB), 2017 WL 2817083 (S.D.N.Y. June 29, 2017)....................11

*Mesias* v. *Cravath, Swaine & Moore LLP*,
    106 F. Supp. 3d 431 (S.D.N.Y. 2015)...............................................................16

*Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)............................................................................13

*Mohan* v. *City of New York*,
    No. 17 Civ. 3820 (KPF), 2018 WL 3711821 (S.D.N.Y. Aug. 3, 2018) ..................21

*Moore* v. *Verizon*,
    No. 13-cv-6467 (RJS), 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) .............. *passim*

*Navana Logistics Ltd.* v. *TW Logistics, LLC*,
    No. 15-cv-856 (PKC), 2016 WL 796855 (S.D.N.Y. Feb. 23, 2016) ......................24

*Pedi* v. *Gov't Emps. Ins. Co.*,
    No. 11 Civ. 5977 (VB), 2012 WL 6918388 (S.D.N.Y. Dec. 10, 2012) ..................11

*Riscili* v. *Gibson Guitar Corp.*,
    No. 06 Civ. 7596(RJH), 2007 WL 2005555 (S.D.N.Y. July 10, 2007)...................24

*Samsung Display Co., Ltd.* v. *Acacia Research Corp.*,
    No. 14-CV-1353 (JPO), 2014 WL 6791603 (S.D.N.Y. Dec. 3, 2014)...................22

*Sang* v. *Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013).................................................................23

*Scroggins* v. *Scroggins*,
    No. 15 Civ. 9524 (PAE), 2017 WL 1047356 (S.D.N.Y. Mar. 16, 2017) ................11

*Sellers* v. *M.C. Floor Crafters Inc.*,
    842 F.2d 639 (2d Cir. 1988)............................................................................10

*Shands* v. *Lakeland Central Sch. Dist.*,
    No. 15-CV-4260 (KMK), 2017 WL 1194699 (S.D.N.Y. Mar. 30, 2017) ...............13

*Smith* v. *Centerlight Healthcare, Inc.*,
    No. 17cv2135 (DLC), 2018 WL 3104086 (S.D.N.Y. June 21, 2018) ....................21

*Smith* v. *Mikki More, LLC*,
    21 F. Supp. 3d 276 (S.D.N.Y. 2014).................................................................25

*Tarshis* v. *Riese Org.*,
  195 F. Supp. 2d 518 (S.D.N.Y. 2002) ..................................................................17

*Thai* v. *Cayre Grp., Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ..................................................................23

*Venezia* v. *Luxoticca Retail N. Am. Inc.*,
  No. 13 Civ. 4467(RJS), 2015 WL 5692146 (S.D.N.Y. Sept. 28, 2015) ................18

*Wehrum* v. *Illmensee*,
  74 A.D.3d 796 (2d Dep't 2010) ...........................................................................25

## STATUTES

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................10

Fed. R. Civ. Proc. 12(c) .................................................................................1, 10, 11

N.Y. Work. Comp. Law § 29(6) ................................................................................24

New York Civil Rights Law § 74 ................................................................................23

Defendants Wafra Investment Advisory Group, Inc., d/b/a Wafra Inc. ("Wafra") and Fawaz Al-Mubaraki (collectively, "Defendants"), respectfully move the Court pursuant to Federal Rule of Civil Procedure 12(c) to grant judgment on the pleadings against Plaintiff Francis P. Lively, and to dismiss the Complaint with prejudice.

## PRELIMINARY STATEMENT

Mr. Lively brought this action in bad faith, deliberately omitting from his Complaint indisputable public but damaging facts and documents with which he is undoubtedly familiar and which are fatal to his claims. In particular, Mr. Lively conceals Wafra's investigation into the credible sexual harassment and discrimination complaint filed against him by Sabine Kraut, a vice-president in Wafra's Real Estate Division and his direct supervisee. That investigation, which included multiple witness interviews and a review of ample documentary evidence of Mr. Lively's misconduct, was communicated to Mr. Lively as the basis for his termination for Cause. It was also the basis for two complaints filed by Ms. Kraut in the Equal Employment Opportunity Commission ("EEOC") and this Court, which detailed the same allegations against Mr. Lively and attached as exhibits certain evidence on which Mr. Lively's termination was based. Mr. Lively, having settled Ms. Kraut's claims against him, apparently now seeks his revenge on Wafra.

The Complaint filed by Mr. Lively is striking as much for what is present as for what is absent. Notwithstanding Mr. Lively's participation in—indeed, creation of—the ample documentary evidence of his harassment, and Wafra's clear communication that such harassment violated its policies and was the basis for his termination for Cause, Mr. Lively asserts that he was terminated on the basis of his age. No facts are pleaded in support of that assertion, or in support of the offensive and conclusory allegation that Wafra has engaged in a "campaign to purge the company of elder workers." No explanation is offered for the significant gap between

the sole alleged age-related remark about Mr. Lively and Mr. Lively's termination, or to rebut the much more plausible inference that his termination was based on Wafra's investigation into Ms. Kraut's complaint. In fact, no mention *whatsoever* is made of the investigation, or that Ms. Kraut sued Mr. Lively and Wafra for Mr. Lively's misconduct and attached to certain filings much of the same evidence she provided to Wafra during its investigation.

Rather than attack those incontrovertible facts head on, because he cannot, Mr. Lively chooses to conveniently ignore them. But even if Mr. Lively could plausibly allege that he did not engage in the misconduct of which he was accused, or was uninformed of the investigation that Wafra conducted, and in which he participated, his claims still would fail as a matter of law, for at least four reasons.

*First,* Mr. Lively has pleaded *no* facts that give rise to an inference of age discrimination. Mr. Lively nowhere explains how his age was a "but for" cause, or even a motivating factor in, Wafra's decision to terminate him, which is the only alleged adverse action in the Complaint. The sole alleged age-related comment by Defendant Mr. Al-Mubaraki, Wafra's CEO, was supposedly made at an after-hours work event in November 2017—*six months* before Mr. Lively was terminated. That gap is insufficient to raise a plausible inference that Mr. Lively's termination was impermissibly based on his age. And, regardless of this lack of temporal proximity, courts in the Second Circuit are clear that a single stray remark, without additional factual allegations, cannot support an age discrimination claim.

*Second*, Mr. Lively's wholly conclusory assertion that his termination was part of a broader "campaign" against older employees is facially deficient to support an age discrimination claim. Mr. Lively names a few "senior executives" who have left Wafra, but does

not allege *anything* about the circumstances of their departures, let alone adequately plead that age discrimination played a role in any of them.

*Third*, Mr. Lively fails to adequately plead a retaliation claim. He plainly alleges no retaliatory animus directed at him. Instead, he relies solely on the theory that his termination must have been in response to his decision to "report" Mr. Al-Mubaraki's November 2017 comment. But the "reporting" alleged in the Complaint consists of two conversations immediately following the November 2017 stray remark. Mr. Lively does not allege that Wafra took any retaliatory action at that time, or immediately thereafter. Instead, he ignores Wafra's investigation of Ms. Kraut's complaint, which *immediately* preceded, and was stated as the basis for, his termination.

*Finally*, Mr. Lively's claims under state law warrant dismissal because this Court lacks jurisdiction over them. Courts in this district regularly dismiss state and city law claims where the federal claims have been dismissed. Even if the Court were inclined to exercise jurisdiction over Mr. Lively's state law claims, they fail as a matter of law.

For these reasons and the ones set forth below, Defendants respectfully request that the Court grant judgment on the pleadings against Mr. Lively.

## BACKGROUND

The following facts are taken from the Complaint, Defendants' Amended Answer, and certain other public filings by Ms. Kraut. On April 11, 2018, Ms. Kraut reported to Wafra, through counsel, for the first time that Mr. Lively had been harassing and discriminating against her for six years. (Dkt. 38 at 2.) Wafra immediately retained counsel to investigate Ms. Kraut's allegations. That investigation included a review of significant documentary evidence, much of which had been communicated or given to Ms. Kraut by Mr. Lively, as well as interviews with Ms. Kraut, Mr. Lively, and Yvonne Compitello, Mr. Lively's 66-year-old successor. On May 1,

2018, just three weeks after Ms. Kraut first reported Mr. Lively's misconduct, Wafra determined

that Mr. Lively's misconduct violated Wafra's policies prohibiting sexual harassment and

discrimination and therefore warranted termination for Cause. (*Id.*)

The evidence revealed during Wafra's investigation is largely known to Mr.

Lively, whether because he authored it himself or because it was attached to, or referenced in,

Ms. Kraut's EEOC and federal complaints against Mr. Lively, and therefore cannot be disputed.

As detailed in Wafra's Amended Answer, that evidence demonstrates that, beginning in 2012,

Mr. Lively regularly proclaimed to Ms. Kraut that he had romantic feelings for her, even though

he also recognized that his feelings were unreciprocated. For example, in December 2012, Mr.

Lively sent Ms. Kraut a Christmas card to her home. (*See* Dkt. 38-2.) Calling her pet names like

"baby sister" and "schatzie," the German word for "darling," Mr. Lively confessed that "never

ha[d] [he] loved and desired so much, but been left so unrequited." (*Id.*) Mr. Lively realized that

Ms. Kraut did not reciprocate his romantic feelings and that he had "made mistakes" with Ms.

Kraut for which he had previously apologized. (*Id.*) Yet, Mr. Lively fantasized that when they

worked together in the future, he would continue to feel "small pleasures" that would make him

feel "8 miles high," such as taking Ms. Kraut's hand, taking her arm to whisper into her ear

during a meeting, or catching her scent. (*Id.*)

Mr. Lively also gave Ms. Kraut unsolicited gifts. For instance, in 2012, he gave

her a firecracker with a note that declared "Sabine, I think you are as hot as a firecracker!" (Dkt.

38-6.) He also mailed a note on his stationary to her home and enclosed dried flowers,

presumably from "9000 ft up" in Glacier National Park, as the note indicated. (Dkt. 38-7.) On

other occasions, Mr. Lively gave Ms. Kraut $200 in cash with a note to "put the money to good

use" (Dkt. 38-8), a gift with a note that recognized he was "a prideful man," which could "get a man in trouble" (Dkt. 38-9), and antique jewelry. (Dkt. 38-10.)

While they worked together, Mr. Lively also sent Ms. Kraut a series of love letters and notes written on his personalized stationary, many of which included love poems. (*See* Dkt. 38-3–5.) For example, on a copy of a love poem about fleeting days spent courting young girls, Mr. Lively wrote "[f]or me, the days I spent with you[.] Love[.]" (Dkt. 38-3.) In one of his handwritten notes, after transcribing a love poem comparing love to an arrow that had apparently landed on a "friend," Mr. Lively wrote to Ms. Kraut stating "Sabi, . . . [i]f we offer something to ourselves, love, eventually we discover its effects[,] [and] [i]t comes back to us, like the 'unbroken arrow.'" (Dkt. 38-4.) In another of his handwritten notes that included a love poem, Mr. Lively wrote that he "wish[ed] [his] feelings were different[.]" (Dkt. 38-5.) Acknowledging that he "[knew] the solution," he promised he would "work[] hard to keep away." (*Id.*) Yet he did not "keep away" at all.

Contrary to Mr. Lively's allegation that he had "no reason to believe" his interactions with Ms. Kraut "were anything but welcomed," (Dkt. 1 ¶ 16), Mr. Lively confessed in an October 2017 telephone conversation (taped by Ms. Kraut), as he apparently had "many times" before, that his romantic feelings toward Ms. Kraut were "obviously [his] issue" because Ms. Kraut "[didn't] have those feelings[.]" (Dkt. 38-1 at 6.) He confessed that "Ms. Kraut "[did] nothing to encourage it," but recognized that "whether [he] encourage[d] these feelings or [Ms. Kraut] encourage[d] them, the bottom line is that there [was] no . . . back and forth" and that his romantic feelings were "a one way street" that was entirely "[his] issue[.]" (*Id.* at 7, 9.) In fact, Mr. Lively described the past "six years of dealing with [Ms. Kraut]" as "beyond torture" because of his unrequited romantic feelings toward her. (*Id.* at 9.) Mr. Lively understood his

romantic feelings toward Ms. Kraut were unwelcome since he first developed them in 2012, as evidenced by the Christmas card he sent to Ms. Kraut in December, in which he acknowledges his "unrequited" feelings and his regrettable mistakes. (Dkt 38-2.) In a separate note that Mr. Lively sent Ms. Kraut, he admitted that he "wish[ed] his feelings were different" and that he knew the solution would be for him to "keep away." (Dkt. 38-5.) Mr. Lively cannot plausibly claim that Ms. Kraut welcomed his behavior.

Mr. Lively also recognized that his "feelings [for Ms. Kraut] [were] such that they g[ot] in the way" professionally. (Dkt. 38-1 at 4.) Mr. Lively admitted that he had sustained unwelcome romantic feelings for Ms. Kraut for the past six years and that those romantic feelings made it impossible for him to have a professional relationship with her and other employees. (Dkt. 38-1 at 7.) Mr. Lively acknowledged that "[he did not] believe that [he was] impartial and [he did not] believe that [he was] being necessarily fair then to [himself], [Ms. Kraut], or others for that matter," and that his "impartiality [was] problematic." (Dkt. 38-1 at 4.) Mr. Lively accepted that it was entirely "[his] issue" and his own "stupidity" and "mixed up feelings" that motivated his continued misconduct. (*Id.* at 5, 9.) Mr. Lively conceded that his unreciprocated romantic feelings toward Ms. Kraut made it difficult for him to be impartial toward his other employees and caused him to take a "demanding" attitude toward Ms. Kraut. (*Id.* at 5.)

After reviewing this evidence, Wafra determined that it could not view Mr. Lively's written advances, unsolicited gifts, and unprofessional conversations with Ms. Kraut as anything other than misconduct that violated Wafra's employee policies prohibiting sexual harassment and discrimination—policies to which Mr. Lively was indisputably subject. Indeed, Mr. Lively had previously signed numerous written acknowledgements that he was

subject to Wafra's employment policies prohibiting sexual harassment and discrimination. (Dkt. 38-13.) Nevertheless, and contrary to Mr. Lively's assertion that he was denied "any opportunity for input" (Dkt. 1 ¶ 12), or that Wafra "negligently failed to provide Lively with an opportunity to discuss his termination with [Wafra] and to review any findings and conclusions derived from any investigation" (*id*. ¶ 90), Wafra's counsel interviewed Mr. Lively. During that interview, Mr. Lively *admitted* several of Ms. Kraut's allegations, including that he had requested that Ms. Kraut sit next to him on flights, written her personal notes, given her gifts, and kissed her. After being interviewed for approximately 15 minutes, however, Mr. Lively terminated the interview to consult with counsel, and thereafter refused to make himself available for further conversations with Wafra's outside counsel. (Dkt. 38 at 5.)

Based on that evidence, and just three weeks after Ms. Kraut first reported Mr. Lively's misconduct, Wafra determined on April 30, 2018, that Mr. Lively had violated its policies prohibiting sexual harassment and discrimination and should be suspended from the workplace without pay pending a final determination. (Dkt. 38-11.) Mr. Lively claims that he was "shocked" to receive his suspension letter (Dkt. 1. ¶ 12), but Wafra's letter clearly stated that he had "violated Company policies prohibiting sexual harassment and discrimination and the Company's Code of Ethics." (Dkt. 38-11.) One day later, on May 1, 2018, Fergus Healy, Wafra's Chief Administrative Officer, sent Mr. Lively a letter notifying him that he had been terminated for Cause for the same reason. (Dkt. 1 ¶ 12; Dkt. 38-12.) Mr. Lively concedes that Wafra communicated to him the basis for his termination. (Dkt. 1 ¶ 12.)

Shortly after Mr. Lively's termination, Ms. Kraut filed a complaint with the EEOC. (Dkt. 38-14.) Ms. Kraut's EEOC complaint details the same allegations of Mr. Lively's misconduct that she conveyed to Wafra during its investigation, including Mr. Lively forcibly

kissing and touching her (*id.* ¶¶ 11, 19), making sexual comments to her (*id.* ¶ 36), leering at her (*id.* ¶ 19), visiting her home without her permission (*id.* ¶ 49), confronting her in the office with his romantic feelings toward her (*id.* ¶ 22), calling her demeaning nicknames (*id.* ¶¶ 28, 32), directing that they travel together (*id.* ¶¶ 11, 18, 35), driving her to her home (*id.* ¶ 16), writing her unsolicited romantic messages (*id.* ¶¶ 12–15, 20–21, 30 ), and giving her unwanted gifts (*id.* ¶¶ 23, 27, 42). Shortly after Ms. Kraut filed her EEOC complaint, certain news sources published stories about Mr. Lively's termination and Ms. Kraut's allegations against Mr. Lively. Shockingly, without *any* factual support, Mr. Lively alleges that Wafra must have "leaked" that information to news outlets—even though Wafra, too, was named in Ms. Kraut's EEOC action and portrayed negatively in the stories. (Dkt. 1 ¶ 23.)

Upon receiving a Notice of Right to Sue from the EEOC, Ms. Kraut filed an action in the United States District Court for the Southern District of New York in which she made substantially the same allegations against Mr. Lively. (Dkt. 38-15.) Ms. Kraut alleged that she had "endured six years of persistent sexual harassment at the hands of the man who had direct control over her career, career growth, and day-to-day tasks, and who exploited his superior position to inundate her with a barrage of unsolicited and unwanted advances during her past six years at Wafra." (*Id.* ¶ 2.) Mr. Lively settled Ms. Kraut's harassment claims against him in August 2019. (*Kraut* v. *Wafra Inc., et al.*, No. 1:18-cv-11155 (DAB) Dkt. 35 (S.D.N.Y. Aug. 21, 2019).

Despite these incontrovertible facts, well known to Mr. Lively, the Complaint alleges that Mr. Lively was terminated because of his age and that Wafra's stated reason for his termination was mere pretext. (Dkt. 1 ¶ 16.) But Mr. Lively does not, and cannot, plausibly allege any non-speculative facts in support of that claim. Instead, he puts forth two wholly

conclusory theories, neither of which establishes that his age played any part in Wafra's decision to terminate him. *First*, Mr. Lively alleges that shortly after Fawaz Al-Mubaraki was promoted to CEO in June 2017, Mr. Al-Mubaraki began making comments during meetings that Mr. Lively was "too old" and "that he would seek to replace" Mr. Lively with a "younger counterpart[]." (*Id.* ¶ 13.) The Complaint identifies no facts whatsoever in support of that allegation: no specific meetings, or any specific comments allegedly made by Mr. Al-Mubaraki at those meetings. The *only* factual allegation regarding Mr. Lively's age is that, at an after-hours gathering on November 13, 2017—six months before his termination—Mr. Al-Mubaraki "casually stated" to Mr. Lively's son that Wafra should replace older employees like Mr. Lively with younger employees like Mr. Lively's son. (*Id.* ¶ 14.) *Second*, Mr. Lively makes the broad, general assertion that Wafra has "terminated or forced out many of its senior executives," and that his termination must have been part of a "campaign to purge the company of elder workers." (*Id.* ¶ 17.) Mr. Lively alleges no other facts regarding the dates or circumstances of the departures of other senior executives.

In addition to his age discrimination claims, Mr. Lively alleges that Wafra terminated him because he complained about age discrimination. He alleges generally that, at some unidentified time before he was terminated, he "complained to his supervisor about the loss of talent and experience, as well as the discriminatory pattern that was emerging." (*Id.* ¶ 18.) And although Mr. Lively claims that he discussed Mr. Al-Mubaraki's November 2017 comment with Robyn Padrone, Wafra's Head of Human Resources, and Vincent Campagna, then Chief Compliance Officer (as well as with two executives at Wafra's Kuwaiti parent company), there are no allegations of when or whether he reported the comment as allegedly discriminatory, or

whether he made a formal complaint that Wafra would have a duty to investigate. (*Id.* ¶¶ 19–20.)

The Complaint also includes vague and speculative allegations in support of state law claims for tortious interference with prospective business or contractual relations, negligence, unjust enrichment, and quantum meruit. Without alleging any supporting facts, Mr. Lively recites the bare elements of these claims: that he "had a reasonable expectation to enter into contracts with several potential partners to acquire properties for investment and management" (*id.* ¶ 27), and that Defendants "interfere[d] with business relationships and prospective contracts to which [he] would have obtained substantial economic benefit" (*id.* ¶ 26), "depriv[ed] [Mr. Lively] millions of dollars in compensation, and partnership and carried interests" (*id.* ¶ 27), and "refuse[] to recognize [Mr. Lively's] entitlement to partnership and/or carried interests . . . relating to his work on several completed fund transactions . . . ." (*Id*. ¶ 28.) The Complaint does not contain *any* details about the particular contracts or business relationships that were Mr. Lively's—as opposed to Wafra's—with which Defendants purportedly interfered, or how Defendants did so, let alone what amount of compensation Mr. Lively is supposedly owed. Also absent from the Complaint is any allegation that the purported relationships or compensation arose outside of Mr. Lively's regular responsibilities for Wafra.

## LEGAL STANDARD

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is proper "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers* v. *M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). A motion for judgment on the pleadings pursuant to Rule 12(c) is addressed under the same standard as that for a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland* v. *Caplaw Enters.*, 448 F.3d 518, 521 (2d

Cir. 2006); *EMA Fin., LLC* v. *AIM Expl., Inc.*, No. 18 Civ. 145 (ER), 2019 WL 689237, at *5

(S.D.N.Y. Feb. 19, 2019).  In order to survive a motion under Rule 12(c), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face,'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550

U.S. 544, 570 (2007)).  But the Court need not accord "[l]egal conclusions, deductions or

opinions couched as factual allegations . . . a presumption of truthfulness.'"  *Pedi* v. *Gov't Emps.*

*Ins. Co.*, No. 11 Civ. 5977 (VB), 2012 WL 6918388, at *2 (S.D.N.Y. Dec. 10, 2012) (alteration

in original) (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)); *see*

*Mazzeo* v. *Mnuchin*, No. 16 Civ. 2747 (VB), 2017 WL 2817083, at *3 (S.D.N.Y. June 29, 2017)

("'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements,' are not entitled to the assumption of truth and thus are not sufficient to withstand a

motion for a judgment on the pleadings.") (quoting *Iqbal*, 556 U.S. at 678).

       In deciding a Rule 12(c) motion, a court may consider "'the complaint, the

answer, any written documents attached to them, and any matter of which the court can take

judicial notice for the factual background of the case.'"  *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647

F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts* v. *Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009));

*see also Amar* v. *N.Y.C. Health & Hosps. Corp.*, No. 14 Civ. 2503(ER), 2015 WL 3754999, at *5

(S.D.N.Y. June 15, 2015) (holding that all of the "materials attached to the Complaint and the

Answer may properly be considered by the Court in deciding the instant [Rule 12(c)] motion").

Courts in this District have regularly granted motions for judgment on the pleadings where the

answer and documents appended to it demonstrate that a plaintiff cannot proceed with its claims.

*See, e.g.*, *Scroggins* v. *Scroggins*, No. 15 Civ. 9524 (PAE), 2017 WL 1047356, at *9–10

(S.D.N.Y. Mar. 16, 2017) (granting judgment on the pleadings "based on the materials attached

to [defendant's] Answer," which demonstrated the contrary of what plaintiff had alleged); *Adams ex rel. 100 Black Men in Law Enforcement Who Care* v. *City of New York*, No. 01 Civ. 9094(TPG), 2003 WL 1741858, at *1–2 (S.D.N.Y. Mar. 31, 2003) (granting judgment on the pleadings where defendant answered "with a detailed set of allegations supported by documents attached to the answer as exhibits," and "[t]he documents attached to the City's answer show conclusively that plaintiffs' complaint is totally miscast").

## ARGUMENT

Regardless of, but particularly in light of, the clear, incontrovertible evidence on which Ms. Kraut's complaint and Wafra's investigation was based, much of which is in the public record and attached to the pleadings in this case, Mr. Lively's claims fail as a matter of law and should be dismissed.

## I.    MR. LIVELY'S AGE DISCRIMINATION CLAIMS MUST BE DISMISSED.

Even setting aside the clear evidence supporting Wafra's legitimate termination of Mr. Lively, the Complaint fails to plausibly allege that age was a "but-for" cause of, or even a "motivating factor" in, Mr. Lively's termination, and does not contain even "minimal support for the proposition" that his termination "was motivated by discriminatory intent."

### A.    Mr. Lively Fails to Allege Sufficiently that Age Was a "But-For" Cause of, or Motivating Factor in, His Termination.

Mr. Lively's age had absolutely nothing to do with his termination.  As Mr. Lively acknowledges, Wafra repeatedly informed him by letter that it was taking employment actions against him because he violated Wafra's policies.  (Dkt. 1 ¶ 12.)  Ms. Padrone first informed Mr. Lively that he was suspended without pay "based on complaints received by Wafra Inc. (the 'Company') that [Mr. Lively] violated Company policies prohibiting sexual harassment and discrimination and the Company's Code of Ethics."  (Dkt. 38-11; Dkt. 1

12

¶ 12.)  Later, Mr. Healy's letter explained that Mr. Lively had been terminated for cause because Wafra "determined that [he had] violated Company policies prohibiting sexual harassment and discrimination and the Company's Code of Ethics."  (Dkt 1. ¶ 12; Dkt. 38-12.)

Presumably, because Mr. Lively recognizes that he cannot do so, Mr. Lively wholly fails to plead any facts demonstrating that his age was a "but for" cause of, or even a motivating factor in, his termination, the only adverse action asserted in his Complaint.  To state a claim for age discrimination under the ADEA or the NYSHRL, Mr. Lively must show that (i) he is a member of a protected class, (ii) he was qualified for the position he held, (iii) he suffered an adverse employment action, and (iv) the adverse action took place under circumstances giving rise to the inference of discrimination.  *See Dimps* v. *Taconic Corr. Facility*, No. 17-cv-8806 (NSR), 2019 WL 1299844, at *6 (S.D.N.Y. Mar. 20, 2019).[1]  Thus, at a minimum, Mr. Lively is required to plead "facts which plausibly suggest that (1) the employer took an adverse action and (2) age was the 'but for' cause of that adverse action."  *Boonmalert* v. *City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (citing *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015)).[2]  Failure to plead that age was a "but-for" cause of an adverse action is fatal.  *See, e.g.*, *Culmone-Simeti* v. *N.Y.C. Dep't of Educ.*, No. 17 Civ. 2313 (ER), 2018 WL 3384437, at *4 (S.D.N.Y. July 11, 2018) (citation omitted).

---

[1]  *Shands* v. *Lakeland Central Sch. Dist.*, No. 15-CV-4260 (KMK), 2017 WL 1194699, at *7 (S.D.N.Y. Mar. 30, 2017) ("Age discrimination claims brought pursuant to the NYSHRL are analyzed identically to claims under the ADEA.") (citations omitted).

[2]  The but-for causation standard applies to Mr. Lively's age discrimination claims under both the ADEA and NYSHRL.  *See, e.g.*, *Boonmalert*, 721 F. App'x at 32.  Even under the more liberal NYCHRL, Mr. Lively must plead not only that he was "treated less well than other employees," but also that he was treated "less well" because of his age.  *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (2d Dep't 2009)); *see also, e.g.*, *Moore* v. *Verizon*, No. 13-cv-6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) ("Even under the more liberal NYCHRL, a plaintiff must allege facts giving rise to an inference of discrimination based on age to prevail.") (citing *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)).

Wafra terminated Mr. Lively after investigating Ms. Kraut's sexual harassment and discrimination complaint against him and determining that Mr. Lively held longstanding unrequited feelings for Ms. Kraut that motivated a slew of unprofessional conduct on Mr. Lively's part, all of which violated Wafra's policies. Wafra terminated Mr. Lively—as it would any employee, regardless of age—based on evidence that on its face showed Mr. Lively's misconduct, including handwritten notes and tape recordings of Mr. Lively, which it reviewed during its investigation. The notion that Mr. Lively's age played any role in his termination is absurd. Regardless, there are no allegations in the Complaint that support "but for" causation. Not only did Mr. Lively fail to plead that his age was a "but for" cause of, or even a "motivating factor" in, his termination, but also the Complaint's bare allegations on Mr. Lively's age cannot support an inference of discriminatory intent.

**B.    Mr. Lively Fails to Plausibly Allege That Wafra Was Motivated By Discriminatory Intent.**

The Complaint cannot support even a minimal inference that Mr. Lively was terminated because of his age. Mr. Lively's entire age discrimination claim rests upon a single comment that Mr. Al-Mubaraki purportedly made to Mr. Lively's son about Mr. Lively's age months before his termination (Dkt 1. ¶¶ 13–14), and the unsupported conclusion that Mr. Lively's termination was part of a campaign by Wafra to terminate older employees. (*Id.* ¶¶ 17–18.) Read separately or together, such allegations cannot support an age discrimination claim and warrant dismissal.

*First*, Mr. Lively does not, and cannot, allege that the purported discriminatory comments Mr. Al-Mubaraki allegedly made *six months* before his termination was anything more than a non-actionable stray remark. "[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to [support] a case of employment discrimination." *Fazzari*

v. *Cohen, Pontani, Lieberman, & Pavane, LLP*, No. 14 Civ. 6549 (NRB), 2019 WL 1258483, at *12 (S.D.N.Y. Mar. 19, 2019) (alterations in original) (quoting *Tubo* v. *Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 739–40 (2d Cir. 2017)). In order to raise an inference of discrimination, Mr. Lively must allege a "nexus" between the comments and the adverse employment action. *Moore* v. *Verizon*, No. 13-cv-6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citations omitted).

No such nexus is alleged here. In fact, Mr. Lively *concedes* that Mr. Al-Mubaraki's purported discriminatory remark occurred at an after-hours event at least five months before his termination. (Dkt. 1 ¶ 14.) In *Moore*, the court held that comments made by plaintiff's immediate supervisor including "why don't you retire," "are you old enough to retire," and remarks that plaintiff experienced age-related hearing loss, were "non-actionable stray remarks" because the remarks occurred at least *three* months before the alleged adverse employment actions and plaintiff did not allege that the remarks played any part in the adverse employment actions. 2016 WL 825001, at *8; *see also Greene* v. *Brentwood Union Free School District*, 966 F. Supp. 2d 131, 140 (E.D.N.Y. 2013), *aff'd*, 576 F. App'x 39 (2d Cir. 2014) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination.") (quoting *Tomassi* v. *Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)).

Moreover, Mr. Lively pleads no facts to suggest that Mr. Al-Mubaraki's comment that Mr. Lively was "too old" and that Mr. Al-Mubaraki would seek to replace him with someone younger—assuming Mr. Al-Mubaraki even made it—played any part in Mr. Lively's termination. Instead, the Complaint conveniently ignores that, in the three weeks leading up to his termination, Wafra investigated Ms. Kraut's sexual harassment and discrimination allegations

against him.  Mr. Lively's claim that he was terminated "without the benefit of an investigation, process, or a meeting with his supervisor and Human Resources" (Dkt. 1 ¶ 15) is patently false. During its investigation into Ms. Kraut's complaint, Wafra's outside counsel and Mr. Healy met with Mr. Lively to discuss the sexual harassment and discrimination complaint against him. (Dkt. 38 ¶ 12.)  During that meeting, Mr. Lively acknowledged that certain of Ms. Kraut's allegations were true.  (*Id.* ¶ 12.)  The letters Mr. Lively received notifying him of his suspension and termination merely confirmed Wafra's own findings.  Mr. Lively admits that he was informed by letter that his termination was due to his violations of company policies prohibiting sex discrimination and harassment and the Code of Ethics.  (Dkt. 1 ¶ 12.)  A plaintiff cannot proceed on such facts. *See Mesias* v. *Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (granting dismissal where plaintiff's supervisor allegedly made discriminatory comments at least three months before plaintiff's termination and continued to supervise her, but plaintiff failed to allege that the remarks were related to the decision-making process leading up to termination and she was informed that her dismissal was due to continued errors).  There is simply no connection made between Mr. Al-Mubaraki's comment and Mr. Lively's ultimate termination.

*Second*, Mr. Lively's conclusion, unsupported by facts, that his termination was part of a larger effort by Wafra to terminate older employees cannot support a discrimination claim.  Mr. Lively alleges only that he and other senior executives at Wafra were terminated in a "campaign to purge the company of elder workers."  (*Id.* ¶¶ 17.)  Such "generalized allegations about other individuals in the protected age group" are insufficient to state a claim because the Complaint does not provide any details whatsoever regarding those individuals' departures from Wafra, and without such details, "his allegations 'ha[ve] no logical tendency to show that

discrimination was present.'" *Dorfman* v. *Doar Commc'ns, Inc.*, 314 F. App'x 389, 391 (2d Cir. 2009) (alteration in original) (quoting *Pollis* v. *New Sch. For Soc. Res.*, 132 F.3d 115, 123 (2d Cir. 1997)) (affirming district court's finding that plaintiff failed to show an inference of discrimination since, although he made generalized allegations about "other individuals in the protected age group being fired," he nonetheless failed "to provide demographic and other information necessary to analyze this data"). And while Mr. Lively claims that he "complained to his supervisor about the loss of talent and experience" (Dkt. 1 ¶ 18), that is simply a fact of retirement, not evidence of discrimination. Mr. Lively pleads no facts to suggest otherwise.

Even if Mr. Lively's allegations about the senior executives' departures were true, and they are not, Mr. Lively's comparison of himself to other "senior executives" fails because none of those individuals were terminated based on violation of policies against sexual harassment and discrimination. *See, e.g.*, *Dinkins* v. *Suffolk Transp. Serv., Inc.*, No. 07-CV-3567 (JFB)(AKT), 2010 WL 2816624, at *9 (E.D.N.Y. July 15, 2010) ("Clearly, an employee who violates a company policy is not similarly situated to an employee who does not violate the policy.").

Moreover, Mr. Lively was replaced by Yvonne Compitello, who is currently 66 years old—two years *older* than Mr. Lively. (Dkt. 38 at 5.) That Wafra replaced Mr. Lively with someone older than him undermines his already baseless assertion that Wafra fired him to "clear a path for younger executives." *See, e.g.*, *Tarshis* v. *Riese Org.*, 195 F. Supp. 2d 518, 526 (S.D.N.Y. 2002) ("When a plaintiff has been replaced by someone older than himself, maintaining an age discrimination claim becomes rather difficult because a fact-finder can draw no reasonable, immediate inference of discrimination."), *aff'd*, 66 F. App'x 238 (2d Cir. 2003). Mr. Lively's age discrimination claim is similarly undermined by the fact that Mr. Al-Mubaraki

is roughly the same age as Mr. Lively.  *See, e.g.*, *Hill* v. *Bloomberg*, No. 14-CV-9809 (CM),

2016 WL 1665599, at *14 (S.D.N.Y. Apr. 20, 2016) (that individuals responsible for the

decision to terminate the employee were themselves over the age of 40 "undermine[s] any

inference of age-based animus").

      In sum, the Complaint does not allege even "minimal support" for the proposition

that Mr. Lively's termination "was motivated by discriminatory intent."  *Moore*, 2016 WL

825001, at *8 (quoting *Johnson* v. *Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016)).

The far more plausible reason for Mr. Lively's termination is the one he concedes was

communicated to him at the time: Mr. Lively violated Wafra's policies prohibiting sexual

harassment and discrimination.  (Dkt. 1 ¶ 12.)

## II.    MR. LIVELY'S RETALIATION CLAIMS MUST BE DISMISSED.

      Mr. Lively's retaliation claim must be dismissed because he cannot show any

causal connection between his purported November 2017 age discrimination complaint and his

May 2018 termination.  To state a claim for retaliation under the ADEA and the NYSHRL,

Mr. Lively must show that (i) he engaged in a protected activity, (ii) Defendants were aware of

that protected activity, (iii) he suffered an adverse employment action, and (iv) there is a causal

connection between his protected activity and the adverse employment action.  *See Moore*, 2016

WL 825001, at *8.  Even under the more lenient NYCHRL standard, Mr. Lively must show that

"a causal connection exist[s] between the protected activity and the negative employment

action."  *Venezia* v. *Luxoticca Retail N. Am. Inc.*, No. 13 Civ. 4467(RJS), 2015 WL 5692146, at

*12 (S.D.N.Y. Sept. 28, 2015) (quoting *Fattoruso* v. *Hilton Grand Vacations Co.*, 525 F. App'x

26, 27 (2d Cir. 2013)), *aff'd sub nom.*, 699 F. App'x 53 (2d Cir. 2017).  Mr. Lively cannot show

that there was a causal connection—either directly or indirectly—between his termination and

any purported protected activity, and therefore his retaliation claims fail as a matter of law.

*First*, on its face, the Complaint fails to allege causation "directly" because it pleads no facts demonstrating or even suggesting "evidence of retaliatory animus" against Mr. Lively. *Carter* v. *Verizon*, No. 13 Civ. 7579(KPF), 2015 WL 247344, at *14 (S.D.N.Y. Jan 20, 2015) (quoting *Hicks* v. *Baines*, 593 F.3d 159, 170 (2d Cir. 2010)). Instead, Mr. Lively asserts the *conclusion* that "[a]s a result of reporting Al-Mubaraki's misconduct . . . [Wafra] seized the opportunity to terminate [Mr.] Lively on the basis of a false accusation of sex discrimination and harassment." (Dkt. 1 ¶ 21.) Not only is that assertion insufficient to state a claim for retaliation as a matter of law, but it is belied by the documents set forth in the Answer. Wafra and its outside counsel reviewed extensive evidence during its investigation into Ms. Kraut's complaints—all of which is known to Mr. Lively given that he authored or participated in it—and terminated Mr. Lively based on its determination that such evidence constituted sexual harassment as defined in its policies. Mr. Lively pleads no facts to suggest that Wafra's determination was based on anything else.

*Second*, Mr. Lively fails to allege "indirect" causation because he pleads no facts demonstrating temporal proximity between his purported age discrimination complaint and his termination, or circumstantial evidence. Mr. Lively alleges that he discussed Mr. Al-Mubaraki's "discriminatory comments" with two Wafra employees in November 2017 (Dkt. 1 ¶¶ 19–21)— six months before his termination. It is undisputed that Wafra took no immediate retaliatory action in response to those discussions. The gap between Mr. Lively's alleged protected activity and his termination is insufficient to demonstrate temporal proximity. *See, e.g.*, *Anderson* v. *City of N.Y., Health & Hosp. Corp.*, No. 1:16-cv-01051 (GBD) (KHP), 2017 WL 9538862, at *10 (S.D.N.Y. Jan. 19, 2017) ("[C]ourts within the Second Circuit generally have held that 'the temporal nexus between the protected activity and the adverse employment action must be three

months or less to establish a causal connection.'") (citation omitted), *report and recommendation adopted sub nom.* 2017 WL 3251603 (S.D.N.Y. July 31, 2017); *Moore*, 2016 WL 825001, at \*15 (dismissing retaliation claim because gap of five months can neither "raise an inference of causation sufficient to survive a motion to dismiss" nor "support an inference of retaliation"). By contrast, Wafra's investigation of Ms. Kraut's complaint against Mr. Lively *immediately* preceded Mr. Lively's termination, further undermining the allegation that the termination was motivated by an alleged complaint made months earlier. (Dkt. 38 at 5.)

Nor can Mr. Lively's retaliation claim rest on a theory of "disparate treatment of fellow employees who engaged in similar conduct." *Carter*, 2015 WL 247344, at \*14 (quoting *Hicks*, 593 F.3d at 170.) The Complaint contains no allegations regarding similarly situated employees. At most, Mr. Lively includes an allegation about "others enduring similar discrimination" at Wafra, without providing any specific facts that would support an inference of discrimination or a causal connection. (Dkt. 1 ¶ 21.) But even if Mr. Lively had plausibly alleged circumstantial evidence, such evidence could not support his retaliation claim because he does not allege that those "others" were credibly accused of and terminated for violating anti-harassment and discrimination policies. *Cf. Dinkins*, 2010 WL 2816624, at \*9 ("Clearly, an employee who violates a company policy is not similarly situated to an employee who does not violate the policy.").

Mr. Lively's failure to adequately allege causation is fatal to his retaliation claims. *See, e.g.*, *Carter*, 2015 WL 247344, at \*13–15 (dismissing retaliation claim, even though defendants did not dispute that plaintiff adequately pleaded "protected activity," because plaintiff failed to plausibly allege causal connection); *Anderson* v. *Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012) (dismissing retaliation claim because "[e]ven assuming,

*arguendo*, that plaintiff has plausibly alleged that he engaged in a protected activity and subsequently suffered adverse employment actions, he has . . . failed to plausibly allege a causal nexus").

## III.  MR. LIVELY'S STATE AND CITY LAW CLAIMS MUST BE DISMISSED.

### A.  There Is No Basis to Exercise Supplemental Jurisdiction Over Mr. Lively's State and City Law Claims.

Mr. Lively's sole bases for federal question jurisdiction are his ADEA claims. Because Mr. Lively fails to state a claim under the ADEA, however, the Court need not exercise supplemental jurisdiction over the remaining claims alleged in the Complaint. *See* 28 U.S.C. § 1367(c) (federal courts may decline to exercise supplemental jurisdiction when, among other scenarios, all claims over which they have original jurisdiction have been dismissed); *Klaper* v. *Cypress Hills Cemetery*, 593 F. App'x 89, 90 (2d Cir. 2015) (citing 28 U.S.C. § 1367(c)(3)); *see also Cohen* v. *Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring) (noting that "our circuit takes a very strong position that state issues should be decided by state courts" and district courts "must have truly strong reasons to exercise supplemental jurisdiction over any state-law claims").

Courts in this District regularly decline to exercise supplemental jurisdiction over state and city law claims in employment discrimination cases where the plaintiff's federal claims are dismissed. *See, e.g.*, *Mohan* v. *City of New York*, No. 17 Civ. 3820 (KPF), 2018 WL 3711821, at *16 (S.D.N.Y. Aug. 3, 2018); *Smith* v. *Centerlight Healthcare, Inc.*, No. 17cv2135 (DLC), 2018 WL 3104086, at *5 (S.D.N.Y. June 21, 2018).  Here, the Court need not exercise supplemental jurisdiction over any of Mr. Lively's state or city law claims.

**B.      Mr. Lively Fails to Adequately Plead His Remaining Claims.**

Even if the Court were inclined to exercise supplemental jurisdiction over

Mr. Lively's state law claims, the insufficient allegations pleaded in support of those claims

warrant their dismissal as a matter of law.

*First*, Mr. Lively fails to state a claim for tortious interference with prospective

business or contractual relations because he fails to allege any wrongful purpose or means on

behalf of Wafra.[3]   Indeed, any prospective business relationships or contracts would have been

*Wafra's*, not Mr. Lively's.   The Complaint is devoid of any allegation that Wafra engaged in any

conduct that was criminal, independently tortious, or solely motivated by a desire to inflict

intentional harm on *him*.   *See Samsung*, 2014 WL 6791603, at *5.   Accordingly, Mr. Lively fails

to allege that Wafra "acted for a wrongful purpose or used dishonest, unfair, or improper

means[.]"   *Id.* (quoting *Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d

Cir. 2008)).   Wafra's decision to terminate Mr. Lively was motivated by the desire to remove an

employee who had engaged in egregious misconduct—*not* "to interfere with business

relationships and prospective contracts to which [Mr.] Lively would have obtained substantial

economic benefit."   (Dkt 1. ¶ 26.)   Mr. Lively was also an at-will employee at Wafra.   Wafra

could not tortiously interfere with its own contracts or business relationships.   *See Coco*

*Investments, LLC* v. *Zamir Manager River Terrace, LLC*, 907 N.Y.S.2d 99 at *7 (N.Y. Sup. Ct.

---

[3]      To state a claim for tortious interference with prospective contractual relations under New York law, Mr. Lively must show that: (1) he "had business relations with a third party"; (2) Wafra "interfered with those business relations"; (3) Wafra "acted for a wrongful purpose or used dishonest, unfair, or improper means"; and (4) Wafra's acts injured the relationship.   *See Samsung Display Co., Ltd.* v. *Acacia Research Corp.*, No. 14-CV-1353 (JPO), 2014 WL 6791603, at *5 (S.D.N.Y. Dec. 3, 2014) (Oetken, J.) (quoting *Catskill Dev., L.L.C.* v. *Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).   The elements required to state a claim for tortious interference with prospective business relations under New York law are substantively the same.   *See Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008).

2010) (dismissing tortious interference claim "because plaintiffs allege[d] that [defendants] interfered with their own contract").

Second, Mr. Lively fails to state a claim for defamation per se[4] because any purported coverage of Ms. Kraut's EEOC Complaint was protected by privilege under New York Civil Rights Law § 74. The articles speak for themselves, but in response to media coverage of Ms. Kraut's EEOC Complaint (Dkt. 38-14)—filed against Mr. Lively and Wafra—Wafra simply issued an honest response. For example, in response to certain media requests—Wafra commented that it was "made aware of these allegations for the first time in the middle of April 2018" and that it "took appropriate action" after an "immediate internal investigation." Wafra's initial reaction to Ms. Kraut's allegations, and its decision to terminate Mr. Lively, are protected under New York Civil Rights Law § 74. See Sang v. Hai, 951 F. Supp. 2d 504, 521 (S.D.N.Y. 2013) (Oetken, J.) ("Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within § 74's privilege.") (citations omitted); Hudson v. Goldman Sachs & Co., 304 A.D.2d 315, 316 (1st Dep't 2003) (holding that an employer's statements to newspaper regarding grounds for an employee's termination, after it had received a complaint and summons, were protected by Section 74). Accordingly, the defamation claim should be dismissed.

Third, Mr. Lively fails to state a claim for negligence because negligence claims in the employment context are preempted by the New York Workers' Compensation Law, which provides "the exclusive remedy to an employee . . . when such employee is injured . . . by the

_____

[4]    To state a claim for defamation under New York law, Mr. Lively must allege: (1) a false statement about him; (2) that was "published to a third party without authorization or privilege"; (3) "through fault amounting to at least negligence on [the] part of the publisher"; (4) that "either constitutes defamation per se or caused 'special damages.'" Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (citation omitted). Here, Mr. Lively asserts a claim for defamation per se, which can be premised on either "statements that cast doubt on a particular quality at the very heart of a profession" or "statements that impugn the basic integrity of a business." Kforce, Inc. v. Alden Personnel, Inc., 288 F. Supp. 2d 513, 516 (S.D.N.Y. 2003) (citations omitted).

negligence or wrong of another in the same employ." N.Y. Work. Comp. Law § 29(6).

Regardless of the type of negligence claim that Mr. Lively attempts to assert here, the New York

Workers' Compensation Law precludes it. *Riscili* v. *Gibson Guitar Corp.*, No. 06 Civ.

7596(RJH), 2007 WL 2005555, at *5 (S.D.N.Y. July 10, 2007) ("Even if the Amended

Complaint adequately alleged [a cause of action for negligent hiring, retention, and supervision

under New York state law], it still must fail because the New York Workers' Compensation Law

'is the exclusive remedy to an employee . . . when such employee is injured . . . by the

negligence or wrong of another in the same employ.") (quoting N.Y. Workers' Comp. Law

§ 29(6)).

> *Fourth*, Mr. Lively fails to state a claim for either unjust enrichment or quantum

meruit because Mr. Lively's allegations about his purported "entitlement to partnership and/or

carried interests" are vague and conclusory. (Dkt. 1 ¶ 28.) Under New York law, quantum

meruit and unjust enrichment claims may be considered together as a "single quasi contract

claim." *Foros Advisors LLC* v. *Digital Globe, Inc.*, 333 F.Supp.3d 354, 364 (S.D.N.Y. 2018)

(citation omitted); *see Navana Logistics Ltd.* v. *TW Logistics, LLC*, No. 15-cv-856 (PKC), 2016

WL 796855, at *8 (S.D.N.Y. Feb. 23, 2016) ("Where a plaintiff pleads both quantum meruit and

unjust enrichment claims together, many courts applying New York law have treated the two

claims as a single quasi-contract claim.") (citations omitted).[5]

---

[5]   To state a claim for unjust enrichment under New York law, Mr. Lively must show that: (1) Wafra benefitted (2) at his expense, and (3) "equity and good conscience require restitution." *Beth Israel Med. Ctr.* v. *Horizon Blue Cross & Blue Shield of NJ, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *see also Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 370 (S.D.N.Y. 2016); *LivePerson, Inc.* v. *24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015); *Smith* v. *Mikki More, LLC*, 21 F. Supp. 3d 276, 283 (S.D.N.Y. 2014). To state a claim for quantum meruit under New York law, Mr. Lively must show: (1) "the performance of services in good faith"; (2) "the acceptance of the services by the person to whom they are rendered"; (3) "an expectation of compensation therefor"; and (4) "the reasonable value of the services." *J.T. Magen & Co., Inc.* v. *Allen Edmonds Corp.*, 268 F. Supp. 3d 481, 486 (S.D.N.Y. 2017) (quoting *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009)).

Mr. Lively's conclusory allegations about his purported "entitlement to partnership and/or carried interests . . . relating to his work on several completed fund transactions," and about working diligently, raising capital, and acquiring assets—accompanied by no details other than a vague reference to one fund—are plainly insufficient to state a claim. (Dkt. 1 ¶ 28.)  While Mr. Lively asserts, in conclusory fashion, that Wafra has "deprive[d] [his] entitlement to partnership and/or carried interests" (*id.* ¶ 29), he in no way explains what, if any, benefit Wafra has received, how that purported benefit was received at his expense, or whether, as a result, "equity and good conscience require restitution."  *Gerard* v. *Traffic Safety, LLC*, No. 11 CV 8550(VB), 2012 WL 2866255, at *6 (S.D.N.Y. July 2, 2012).  Mr. Lively also does not allege that he pursued any opportunity or performed any work other than that which was required of him by virtue of his regular job responsibilities.  Nor does he allege that any work he performed was requested or mutually agreed upon with Wafra.  Mr. Lively's quantum meruit claim fails for these additional reasons.  *See, e.g.*, *Wehrum* v. *Illmensee*, 74 A.D.3d 796, 798 (2d Dep't 2010) ("Since the plaintiff's services were not requested, explicitly or implicitly, he cannot recover in quantum meruit.").  Moreover, "equity and good conscience" counsel against relief for Mr. Lively on these claims since the pleadings and exhibits attached thereto demonstrate that the crux of Mr. Lively's lawsuit—his age discrimination claims—are entirely baseless.  Thus, both his unjust enrichment and quantum meruit claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant its Motion for Judgment on the Pleadings with prejudice.

Dated:    New York, New York
          January 17, 2020

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  /s/ Martin Flumenbaum
Martin Flumenbaum
Brette Tannenbaum
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
mflumenbaum@paulweiss.com
btannenbaum@paulweiss.com

*Counsel for Defendants Wafra Inc. (f/k/a Wafra Investment Advisory Group, Inc.) and Fawaz Al-Mubaraki*