UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FRANCIS P. LIVELY,

                       Plaintiff,

           -v-

WAFRA INVESTMENT ADVISORY
GROUP, INC. and FAWAZ
AL-MUBARAKI,

                       Defendants.

19-CV-3257 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    Plaintiff Francis P. Lively, a real estate executive, files suit against his former employer WAFRA Investment Advisory Group, Inc. and its Chief Executive Officer Fawaz Al-Mubaraki. (Dkt. No. 1 ("Compl.").)  Lively alleges that WAFRA discriminated against him on the basis of his age and retaliated against him for opposing such discrimination, both in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").  (Compl. ¶¶ 33–43.)  Lively also brings discrimination claims under state and city law and tort and contract claims under state law. (Compl. ¶¶ 44–103.)  Defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. No. 39.)  For the reasons that follow, the motion is granted.

**I.    Background**

    The following facts are drawn from the complaint, the answer, and the exhibits attached thereto.[1]

---

[1] On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir. 2009).  Facts

### A.   Lively, His Time at WAFRA, and the Events Leading to His Termination

Plaintiff Lively was sixty-four years old at the time he filed his complaint. (Compl. at 2.) Prior to his termination, he had been an employee at WAFRA for over twenty-one years. (Compl. ¶ 9.) While at WAFRA, Lively was hailed "as an invaluable member and leader of the Real Estate Division." (Compl. ¶ 11.) He was twice recognized by WAFRA's CEO Al-Mubaraki for his "exceptional work," first "by email in 2017, and again in 2018, during Lively's annual self-evaluation." (Compl. ¶ 11.) But in April 2018, once allegations of sexual harassment and discrimination were made against Lively by an underling, he was suspended without pay and, the next day, terminated for cause. (Compl. ¶ 12.)[2]

Despite a plethora of evidence indicating that Lively was fired for his inappropriate conduct, Lively maintains that Defendants gave him the boot on account of his age. (Compl. ¶ 13.) Further, Lively alleges that the allegations made against him were "manufactured" to serve as "pretext" in order to "fire him for being an older worker" (Compl. ¶ 16), and that his termination was really part of a larger campaign by WAFRA to "purge the company of [its] elder workers." (Compl. ¶ 17.)

To support these claims, Lively states that sometime after June of 2017 Al-Mubaraki "began making negative comments about Lively's age" and began expressing his desire to

---

pleaded in the complaint are assumed true "unless contradicted by more specific allegations or documentary evidence." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

[2] Lively calls attention to WAFRA's swift response to the allegations made against him numerous times throughout his complaint, as well as the fact that he "was terminated without the benefit of an investigation." (*See* Compl. ¶¶ 12, 15, 21.) WAFRA claims otherwise. (Dkt. No. 25 ("Answer") at 1.) In any event, these points are of limited relevance, especially in light of the "Acknowledgement of Employee Handbook" signed by Lively in which he affirmed his understanding that "Wafra can terminate the employment relationship at any time, with or without cause and with or without advance notice, for any reason not expressly prohibited by *applicable* law." (Dkt. No. 25-13 at 5.)

replace the older executives with "younger counterparts." (Compl. ¶ 13.) He cites only one specific instance where this occurred: a November 13, 2017, "after-hours gathering" where Al-Mubaraki "casually stated to Lively's son that WAFRA needed to replace older employees like his father with younger employees like Lively's son." (Compl. ¶ 14.) Additionally, Lively points to five other "senior executives" being "terminated or forced out" by WAFRA. (Compl. ¶ 17.)

Lively states that he reported Al-Mubaraki's "comments and stated plans to the Human Resources Director," the "Chief Operating Officer," and "a Senior Manager of WAFRA's parent company." (Compl. ¶¶ 19, 20.) The HR Director reportedly "expressed frustration that Al-Mubaraki *continued to engage* in inappropriate conduct." (Compl. ¶ 19 (emphasis omitted).) The COO reportedly "expressed forlorn acceptance of Al-Mubaraki's conduct and asked whether Lively reported his complaint to anyone else," to which "Lively responded by asking him if it mattered." (*Id.*) And the Senior Manager of the parent company "suggested that [Lively] view Al-Mubaraki's statement as humorous, or as a joke," to which Lively responded by saying "he did not see it as" a joke. (Compl. ¶ 19.) After no action was taken, Lively reportedly followed up with the HR Director and the COO, both of whom "continued to express their frustration with Al-Mubaraki's conduct but offered no remedy," leaving Lively in "fear[] that they would take no action regarding his complaint." (Compl. ¶ 22.)

### B. The Sexual Harassment and Discrimination Allegations

WAFRA's stated reason for terminating Lively is his violation of their policies and Code of Ethics in light of their investigation into the sexual harassment and discrimination allegations made against Lively by Sabine Kraut, who had worked under Lively in WAFRA's Real Estate Division for six years. (Answer at 1, 2.) In his complaint, Lively brushes off these allegations by claiming that Kraut "ha[d] regularly and voluntarily solicited [his] involvement in her

3

personal and professional life," and that he "had no reason to believe that their interactions were anything but welcomed." (Compl. ¶ 16.) In its answer, WAFRA provides various documentary evidence, most of it penned or spoken by Lively himself, that negates these assertions.

First, and most revealing, is a transcript of a recorded conversation between Lively and Kraut that took place on October 26, 2017, in which Lively details his unreciprocated feelings for Kraut: "[A]s I said many times, it's obviously my issue, you don't have that issue, you don't have those feelings"; "[T]he bottom line is that there is no, that there's no back and forth here, it's a one way street and it's my issue and I'll deal with it"; "[L]ook, these are my feelings, that's all, you know. So, so they're rejected . . . and I don't know what to tell you, I mean, I wish I had better control of those emotions and feelings, you know, I certainly spent six years trying to control them"; "[I]t's the first time in a long time, I could stand in front of you and tell you, 'I like you, and you don't like me.' And that's hard to swallow"; "And you've done nothing to encourage it, it's my own stupidity, ok, I'm tripping over my own feelings." (Dkt. No. 25-1 at 6, 7, 9.) In the same conversation Kraut had told Lively that she wanted their interactions to be about "the business that it is supposed to be." (*Id.*)

WAFRA additionally provides eight notes handwritten by Lively and sent to Kraut in which he reiterates his feelings for her and, in some instances, accompanies the notes with unsolicited gifts. (*See* Dkt. Nos. 25-2, 25-3, 25-4, 25-5, 25-6, 25-7, 25-8, 25-9.) In a 2012 note, Lively tells Kraut "never have I loved and desired so much, but been so unrequited. That's <u>you</u> we're talking about and it is and will be what it is." (Dkt. No. 25-2 (emphasis omitted).) He goes on to state that if "we continue to work together, I will always have the small pleasures of innocently taking your hand to examine your thumb and with that touch, feeling 8 miles high, or

4

taking your arm to whisper something to you at a meeting and catching that wonderful scent of you." (*Id.*)  In another 2012 note, he calls her "hot as a firecracker." (Dkt. No. 25-6.)

Furthermore, after Kraut alerted WAFRA to Lively's conduct, she filed a complaint with the Equal Employment Opportunity Commission against WAFRA and Lively. (Answer at 5, 6.) In that EEOC complaint, Kraut provides additional details regarding Lively's alleged misconduct, such as Lively "forcibly kissing her" and "unexpectedly put[ting] his hand up [her] dress," among other things. (Dkt. No. 25-14 ¶¶ 11, 19.)  After receiving a Notice of a Right to Sue from the EEOC (Answer at 6), Kraut then filed a lawsuit against WAFRA and Lively on the same grounds. (Dkt. No. 25-15.)

### C.   The Aftermath of Lively's Termination

Following his termination from WAFRA, Lively claims "WAFRA's employees published knowingly false statements about him" and that "WAFRA . . . declared in press statements that it terminated Lively based on its 'investigation' into the complaint[s]" made against him. (Compl. ¶ 23.)  *The Real Deal*, *Bisnow New York*, *Arab Times*, and *Bloomberg* all wrote articles on Lively's termination and the sexual misconduct claims made against him, all of which Lively attributes to an "animus-driven smear campaign" on the part of WAFRA. (Compl. ¶¶ 24, 25.)  Per Lively, these publications resulted in "alienating [him] from any employment prospects within the real estate industry" (Compl. ¶ 25), and "interfere[d] with business relationships and prospective contracts to which [he] would have obtained substantial economic benefit." (Compl. ¶ 26.)  Furthermore, Lively goes on to claim that "WAFRA [is] refus[ing] to recognize [his] entitlement to partnership and/or carried interests (*i.e.*, profit sharing in funds) relating to his work on several completed fund transactions." (Compl. ¶ 28.)  According to Lively, both the "smear campaign" and the "refusal to recognize Lively's entitlement to

partnership and/or carried interests" were "plainly motivated by WAFRA's animus against Lively based on age." (Compl. ¶¶ 25, 29.)

As a result, Lively initiated this lawsuit on April 11, 2019, by filing a complaint against WAFRA and Al-Mubaraki. Lively brings claims of age discrimination and retaliation, tortious interreference with prospective business or contractual relations, defamation per se, negligence, unjust enrichment, and quantum meruit. (Compl. ¶¶ 33–103.) Defendants have filed an answer and have moved for judgment on the pleadings. (Dkt. No. 39.) Plaintiff opposes the motion and, in the alternative, seeks leave to amend the complaint. (Dkt. No. 50.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) authorizes the Court to grant judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The movant must show that he or she "is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam). To determine whether the movant has made this showing, the Court applies the "same standard" it would apply to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "'accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences' in favor of the" nonmoving party. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

On a Rule 12(b)(6) motion to dismiss, "although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions," *Hayden*, 594 F.3d at 161 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), and to facts "contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647

F.3d 419, 422 (2d Cir. 2011). Furthermore, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 678).

Finally, "[o]n a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "'A complaint is [also] deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). Importantly, a "'[p]laintiff['s] failure to include matters of which [she] had notice and which were integral to [her] claim — and that [she] apparently most wanted to avoid — may not serve as a means of forestalling the district court's decision.'" *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, F.2d 42, 48 (2d Cir. 1991)).

## III.   Discussion

Lively brings federal claims under the ADEA, as well as various state and city claims. Each set of claims is discussed in turn.

### A.   Federal Claims

Lively first asserts discrimination and retaliation claims against WAFRA pursuant to the ADEA. (Compl. ¶¶ 33–43.) Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Both of Lively's ADEA claims are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010). Under this framework, "the plaintiff bears the initial

burden of establishing a prima facie case of discrimination." *Id.* at 106.  Once a plaintiff has successfully carried this burden, "the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for [the challenged employment] action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant is able to do so, then "the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's [action] was in fact the result of discrimination." *Id.*

Notably, a showing of a prima facie case of discrimination at the first step suffices to defeat a motion to dismiss.  "*Iqbal* . . . does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015).  Just as "the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment," so too does the "presumption . . . reduce[] the facts needed to be *pleaded* [to defeat a motion to dismiss]." *Id*.  In other words, to survive a Rule 12(b)(6) motion (and therefore a Rule 12(c) motion) in the ADEA context, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but instead "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311.

With these principles in mind, the Court turns to an examination of the sufficiency of Lively's pleading with respect to his ADEA claims.

### 1.  Age Discrimination Under the ADEA

Lively's first claim is that WAFRA discriminated against him on the basis of his age in violation of the ADEA.  (Compl. ¶¶ 33–48.)   To state an ADEA discrimination claim, a plaintiff must show that (1) she "was within the protected group"; (2) "she was qualified for the position"; (3) "she experienced [an] adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107.  In

particular, the plaintiff must plausibly allege that age was the "but-for" cause of the adverse employment action.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

Here, the complaint is devoid of facts plausibly alleging but-for causation.  Lively's conclusory allegation, for example, that WAFRA was engaging in a "campaign to purge the company of elders workers" by "terminat[ing] or forc[ing] out many of its senior executives" (Compl. ¶ 17) does not suffice to meet his burden because the complaint lacks specific facts regarding "dates, ages, or reasons with respect to the termination of [the] other employees." *Marcus v. Leviton Mfg. Co.*, 661 F.App'x 29, 32 (2d Cir. 2016) (summary order).  Such "skeletal pleading . . . does not allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The complaint contains only one nonconclusory allegation in support of Lively's argument that age was the reason for his termination: his boss Al-Mubaraki's "making negative comments about [his] age."  (Compl. ¶ 13.)  Although Lively insinuates this was a regular occurrence (*id.*), he cites only one specific instance of this happening: a November 13, 2017, "after-hours gathering" where Al-Mubaraki allegedly told Lively's son that "WAFRA needed to replace older employees like his father with younger employees like Lively's son."  (Compl. ¶ 14.)  This alleged comment, however, was made almost six months before Lively was terminated.  (*Id.*)  The gap between the sole alleged comment and the subsequent termination is significant because "'[s]tray remarks . . . are rarely given great weight, particularly if they were made temporally remote [from] the date of the decision.'"  *Campbell v. All. Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)); *see also Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at

*8 (S.D.N.Y. Feb. 5, 2016) (Sullivan, J.) ("[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to support a case of employment discrimination.").

More importantly, any inference of but-for causation is undermined by the existence of a far more plausible cause of Lively's termination: the allegations of sexual harassment and discrimination made against Lively by another employee.[3] Nearly six months separate the alleged comment by Al-Mubaraki from Lively's termination (*see* Compl. ¶ 14.), while less than a month separates the claims of sexual misconduct made against Lively and his termination (*see* Answer at 2). A far stronger "nexus," then, exists between the sexual harassment claims against Lively and WAFRA's decision to discharge him. *Moore*, 2016 WL 825001, at *8 (quoting *Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005)). The absence of a sufficiently strong nexus between Al-Mubaraki's alleged comment and Lively's termination renders the comment a "non-actionable stray remark[]." *Id.* at *9.

Finally, the fact that Lively was replaced by someone "who is currently 66 years old — two years *older* than" he is (Answer at 17), fatally undermines his claim that Defendants wanted "to replace older employees like Lively with younger employees" (Compl. ¶ 14). *See Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 408–09 (2d Cir. 1991) ("[A] *prima facie* case of age discrimination . . . requires a plaintiff . . . to show . . . that a younger individual has replaced her."); *Tarshis v. Riese Org.*, 195 F. Supp. 2d 518, 526 (S.D.N.Y. 2002) ("When a plaintiff has

---

[3] The Court takes into consideration the exhibits attached to Defendants' answer detailing the sexual harassment and discrimination claims against Lively because they are "'integral to [Lively's] ability to pursue' his cause of action" and because they "contradict[]" the allegations made in Lively's complaint. *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). Moreover, Lively "had notice [of the exhibit documents] well before [Defendants] attached them to [their] Answer (because [Lively authored, spoke,] sent or received them)." *L-7 Designs, Inc.*, 647 F.3d at 422. Finally, his desire "to avoid" their disclosure "may not serve as a means of forestalling [this Court's] decision." *Id.* (quoting *Cortec*, 949 F.2d at 44).

been replaced by someone older than himself, . . . a fact-finder can draw no reasonable, immediate inference of discrimination.").

In short, Lively must plead sufficient facts plausibly suggesting that age — rather than, say, his violation of WAFRA's policies prohibiting sexual harassment and discrimination in the workplace — was the "but for" cause of his termination. As Lively has failed to plead any such facts, Defendant's motion for judgment on the pleadings on Lively's ADEA discrimination claim is granted.

### 2. ADEA Retaliation

Lively also contends that WAFRA retaliated against him in violation of the ADEA. (Compl. ¶¶ 39–43.) Retaliation claims under the ADEA are also subject to the *McDonnell Douglas* burden-shifting framework. *Gorzynski*, 596 F.3d at 110. "[F]or a retaliation claim to survive a motion for judgment on the pleadings . . . , the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (alteration in original) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 75, 90 (2d Cir. 2015)). With respect to causation, the Second Circuit has required that a showing "that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 801 F.3d at 91). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.*

Lively's retaliation claims fail because Lively has failed to adequately plead that his termination "would not have occurred in the absence of [a] retaliatory motive." *Id.* (quoting *Vega*, 801 F.3d at 91). He has pleaded no "direct evidence of retaliatory animus," *id.*, but has simply asserted in conclusory fashion that "[a]s a result of reporting Al-Mubaraki's misconduct . . . WAFRA seized the opportunity to terminate Lively based on the basis of a false

11

accusation of sex discrimination and harassment" (Compl. ¶ 21). Such a "threadbare recital[] of the elements of" an ADEA retaliation claim," "supported [only] by mere conclusory statements," is insufficient. *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 678).

Furthermore, the nearly six months that passed between Lively's reporting Al-Mubaraki's age-related comment in November 2017 and Lively's termination in May 2018 — especially in light of Al-Mubaraki's intervening praise for "Lively's substantial contributions and exceptional work" (Compl. ¶ 11) — undermines any plausible inference of causation arising from the "temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625; *see*, *e.g.*, *Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926, at *18 (E.D.N.Y. May 24, 2010) (rejecting "any reasonable inference of causal connection" between plaintiff's protected activities and the alleged retaliatory acts in part because of intervening "satisfactory year-end ratings"); *see also Dayes v. Pace Univ.*, 2 F. App'x. 204, 208 (2d Cir. 2001) (summary order) ("[T]he inordinate amount of time between [plaintiff's] complaint about the [supervisor's] conduct and [the supervisor's] negative review, especially given his intervening positive review, defeats [plaintiff's] attempt to establish a causal connection between the two events.").

Once again, the only plausible conclusion to be drawn from the facts in the complaint, as supplemented with facts from the answer, is that Lively was terminated as a result of his violation of WAFRA's policies prohibiting sexual harassment and discrimination. Because Lively has not plausibly alleged that his having engaged in a protected activity was a "but-for" cause of his termination, Defendants' motion for judgment on the pleadings on Lively's ADEA retaliation claim is granted.

### B. Remaining Claims

Because Lively's federal claims are dismissed, the Court declines supplemental jurisdiction over Lively's remaining state and city claims. *See* 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Thus, pursuant to § 1367(c)(3), the Court declines jurisdiction over the remaining state-law claims.

### C. Leave to Amend

Finally, Lively requests leave to amend. Here, however, the Court does not find that the complaint "suggests that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Nor does Lively "suggest[] [any] new material [he] wishes to plead." *Id.* Accordingly, Lively's request to replead is denied as futile. *See id.*

## IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. Plaintiff's motion for leave to amend is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 39 and to close this case.

SO ORDERED.

Dated: July 17, 2020
    New York, New York

_____
J. PAUL OETKEN
United States District Judge

13